US POSTAGE $009 36

ZIP 02767
041W01272102

First Class Mail



RETURN RECEIPT
REQUESTED

U.S. Attorney's Office
District of Massachusetts
John Joseph Moakley United State Federal
Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210

USMS
SCREENED



WYNN & WYNN.
ATTORNEYS
90 New State Highway
Raynham, MA 02767

Received Office MA











**WYNN & WYNN** P.C.
ATTORNEYS

John D. Bowen*
Michael R. Mancinelli
Shannon Nealon*
John J. O'Day, Jr.
Raymond C. Pelote*
Thomas E. Pontes
William Rosa*
Paul F. Wynn
Thomas J. Wynn

*Of Counsel*

Keough & Sweeney
William E. O'Keefe

Admitted:
  *Massachusetts and Rhode Island

October 5, 2021

<u>**Via Certified Mail**</u>
<u>**Return Receipt No. 7020 1810 0002 1681 0270**</u>
<u>**USPS Tracking No. 9590 9402 6525 0346 4821 37**</u>

U.S. Attorney's Office
District of Massachusetts
John Joseph Moakley United State Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, MA   02210

RE:   St. Anne's Credit Union of Fall River, Mass.
v.    Raymond Silva, Jr., et al
      C.A. No. 2173 CV 00703

Dear Sir/Madam:

Enclosed please find the following documents:

1.  Copy of Summons;
2.  Civil Tracking Order;
3.  Civil Action Cover Sheet; and
4.  Complaint with Exhibits.

Please note that these documents are also being served upon the Internal Revenue Service by the Suffolk County Sheriff's Office as indicated below:

Internal Revenue Service
J.F. Kennedy Post Office
15 New Sudbury Street
Boston, MA   02203

If you have any questions, please contact me at your earliest opportunity.

Very truly yours,

WYNN & WYNN, P.C.

Raymond C. Pelote

RCP/pmk
Enclosures
cc:  Mikaela J. Flanagan, Loss Mitigation Specialist

90 New State Highway  |  Raynham, MA 02767  |  (508) 823-4567  |  (800) 852-5211  |  FAX: (508) 822-4097  |  wynnandwynn.com

# Commonwealth of Massachusetts

BRISTOL, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2173 CV 00703

St. Anne's Credit Union
of Fall River, Mass._____, PLAINTIFF(S),

v.

Raymond Silva, Jr., et al., DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO ___Internal Revenue Service___ . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the ___Bristol County Sup___Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by: Bristol County

   a. Filing your **signed original** response with the Clerk's Office for Civil Business, Superior Court, 441 County Street _____ (address), by mail or in person, **AND** 1st Floor, New Bedford, MA 02740

   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: Raymond C. Pelote, Esq., Wynn & Wynn, P.C., 90 New State Highway, Raynham, MA 02767

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on ___October 4,___ , 20 _21_ . (SEAL)

Marc J. Santos
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20____, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20____        Signature: _____

**N.B.    TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX – BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>2173CV00703 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>St Anne's Credit Union of Fall River, Mass vs. Silva, Jr., Raymond et al | Marc J. Santos, Clerk of Court<br>Bristol County |
|---|---|

| TO: Raymond Crosby Pelote, Esq.<br>Wynn and Wynn P.C.<br>90 New State Highway<br>Raynham, MA 02767 | COURT NAME & ADDRESS<br>Bristol County Superior Court - New Bedford<br>441 County Street, 1st floor<br>New Bedford, MA 02740 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION                    DEADLINE

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court |  | 01/03/2022 |  |
| Response to the complaint filed (also see MRCP 12) |  | 02/01/2022 |  |
| All motions under MRCP 12, 19, and 20 | 02/01/2022 | 03/03/2022 | 04/04/2022 |
| All motions under MRCP 15 | 02/01/2022 | 03/03/2022 | 04/04/2022 |
| All discovery requests **and depositions** served and non-expert depositions completed | 08/01/2022 |  |  |
| All motions under MRCP 56 | 08/30/2022 | 09/29/2022 |  |
| Final pre-trial conference held and/or firm trial date set |  |  | 01/27/2023 |
| Case shall be resolved and judgment shall issue by |  |  | 10/04/2023 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>**10/04/2021** | ASSISTANT CLERK<br>**Dina Swanson** | PHONE<br>**(508)996-2051** |
|---|---|---|

Date/Time Printed: 10-04-2021 14:42:13                    SCV026\ 08/2018

| **CIVIL ACTION COVER SHEET** | DOCKET NUMBER | **Trial Court of Massachusetts** <br> **The Superior Court** |
|---|---|---|
| | | COUNTY | BRISTOL |

| | |
|---|---|
| **Plaintiff**  St. Anne's Credit Union of Fall River, Mass. | **Defendant:**  Raymond Silva, Jr. |
| ADDRESS: 585 State Road | ADDRESS:  9 Morningside Avenue, Acushnet, MA 02743 |
| Dartmouth, MA  02747 | Michelle Silva |
| | 54 Calumet Street, New Bedford, MA 02744 |
| **Plaintiff Attorney:**  Raymond C. Pelote | Katharine Messier |
| ADDRESS:  Wynn & Wynn, P.C. | 50 Breakneck Hill Road, Lincoln, RI 02865 |
| 90 New State Highway | Internal Revenue Service, J.J. Kennedy Post Office |
| Raynham, MA  02767 | 15 New Sudbury Street, Boston, MA  02203 |
| BBO: 655475 | BBO: |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. <br> A14 | TYPE OF ACTION (specify) <br> Interpleader action | TRACK <br> F | HAS A JURY CLAIM BEEN MADE? <br> ☐ YES   ☒ NO |
|---|---|---|---|

*If "Other" please describe:

Is there a claim under G.L. c. 93A?   ☐ YES   ☒ NO          Is there a class action under Mass. R. Civ. P. 23?   ☐ YES   ☒ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

A. Documented medical expenses to date
   1. Total hospital expenses
   2. Total doctor expenses
   3. Total chiropractic expenses
   4. Total physical therapy expenses
   5. Total other expenses (describe below)

Subtotal (1-5):  $0.00

B. Documented lost wages and compensation to date
C. Documented property damages to date
D. Reasonably anticipated future medical and hospital expenses
E. Reasonably anticipated lost wages
F. Other documented items of damages (describe below)

TOTAL (A-F):  $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | Interpleader action to disburse surplus proceeds from a foreclosure sale. | $65,178.67 |
| | Total | $65,178.67 |

Signature of Attorney/Unrepresented Plaintiff: X _____          Date: September 30, 2021

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney/Unrepresented Plaintiff: X _____          Date: September 30, 2021

SC0001: 1/22/2021                    www.mass.gov/courts                    Date/Time Printed:09-21-2021 14:25:44

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS.                                        SUPERIOR COURT DEPARTMENT
                                                   CIVIL ACTION NO.

ST. ANNE'S CREDIT UNION OF          *
FALL RIVER, MASS.                   *
    Plaintiff                *
                                    *
VS.                                 *
                                    *
RAYMOND SILVA, JR.,                 *
MICHELLE SILVA,                     *
KATHARINE MESSIER and               *
THE INTERNAL REVENUE SERVICE,       *
    Defendants               *

## **COMPLAINT**

    This is an interpleader action in which the Plaintiff seeks to determine the rights to surplus funds resulting from a Mortgage Foreclosure Sale.

## **PARTIES**

1.    The Plaintiff, St. Anne's Credit Union of Fall River, Mass., is a Massachusetts credit union with a usual place of business at 585 State Road, Dartmouth, Bristol County, Massachusetts 02747.

2.    The Defendant, Raymond Silva, Jr., is a resident of the Commonwealth of Massachusetts and has a usual residence at 9 Morningside Avenue, Acushnet, Bristol County, Massachusetts 02743.

3.    The Defendant, Michelle Silva, is a resident of the Commonwealth of Massachusetts and has a usual residence at 54 Calumet Street, New Bedford, Bristol County, Massachusetts 02744.

4.    The Defendant, Katharine E. Messier, is a resident of the State of Rhode Island and has a usual residence at 50 Breakneck Hill Road, Lincoln, Providence County, Rhode Island 02865.

5.    The Defendant, Internal Revenue Service, is an agency duly created and existing under and by virtue of an Act of Congress, having a district office at J.F. Kennedy Post Office, 15 New Sudbury Street, Boston, Suffolk County, Massachusetts 02203.

## FACTS

6.      On March 17, 2000, Karin Silva conveyed the property located at 246 Rock O'Dundee Road in Dartmouth, Bristol County, Massachusetts 02748 to Raymond Silva and Karin Silva. The Deed is recorded with the Bristol County Southern District Registry of Deeds in Book 4642 at Page 21.  (A copy of the Deed evidencing same is attached hereto as Exhibit "A".)

7.      On November 8, 2005, Raymond Silva and Karin Silva executed and delivered to the Plaintiff, a Promissory Note in the original principal amount of Two Hundred Seventeen Thousand and 00/100 ($217,000.00) Dollars.  (A copy of the Promissory Note evidencing same is attached hereto as Exhibit "B".)

8.      As security for said Promissory Note, Raymond Silva and Karin Silva granted a Mortgage to St. Anne's Credit Union of Fall River, Mass. encumbering the real property located at 246 Rock O'Dundee Road in Dartmouth, Bristol County, Massachusetts 02748.  The Mortgage was recorded with the Bristol County Southern District Registry of Deeds on November 14, 2005 in Book 7868 at Page 6.  (A copy of the Mortgage evidencing same is attached hereto as Exhibit "C".)

9.      On October 27, 2015, a Notice of Federal Tax Lien in the amount of Thirty-Nine Thousand Three Hundred Three and 34/100 ($39,303.34) Dollars was recorded by the Internal Revenue Service.  The Notice of Federal Tax Lien is recorded with the Bristol County Southern District Registry of Deeds in Book 11515 at Page 9.  (A copy of the Notice of Federal Tax Lien evidencing same is attached hereto as Exhibit "D".)

10.     On August 21, 2017, a Notice of Federal Tax Lien in the amount of Six Thousand Four Hundred Sixty-Three and 86/100 ($6,463.86) Dollars was recorded by the Internal Revenue Service.  The Notice of Federal Tax Lien is recorded with the Bristol County Southern District Registry of Deeds in Book 12177 at Page 177.  (A copy of the Notice of Federal Tax Lien evidencing same is attached hereto as Exhibit "E".)

11.     On October 10, 2017, Karin Silva passed away. (A copy of the Certificate of Death evidencing same is attached hereto as Exhibit "F".)

12.     On August 15, 2018, Raymond Silva, a/k/a Raymond Silva, Sr., conveyed the property located at 246 Rock O'Dundee Road in Dartmouth, Bristol County, Massachusetts 02748 to Ryan Silva, Michelle Silva and Raymond Silva, Jr., reserving a life estate in the property to himself.  The Deed is recorded in the Bristol County Southern District Registry of Deeds in Book 12538 at Page 187.  (A copy of the Deed evidencing same is attached hereto as Exhibit "G".)

13.     On October 17, 2018, Raymond Silva, a/k/a Raymond Silva, Sr. passed away.  (A copy of the Certificate of Death evidencing same is attached hereto as Exhibit "H".)

14.   On July 19, 2019, Ryan Silva passed away.  (A copy of the Certificate of Death evidencing same is attached hereto as Exhibit "I".)  Mr. Silva is survived by his wife, Katharine Messier, leaving no children.

15.   On July 6, 2021, the Plaintiff sold the real property by foreclosure auction, for breach of the conditions pursuant to the customary Power of Sale contained in the Mortgage to John Alphonso Properties, LLC for Two Hundred Seventy-Five Thousand and 00/100 ($275,000.00) Dollars.  The Mortgagee's Deed and Affidavit were recorded on August 24, 2021 with the Bristol County Southern District Registry of Deeds in Book 13968 at Page 251.  (A copy of the Mortgagee's Deed and Affidavit evidencing same is attached hereto as Exhibit "J").

16.   After deduction and payment of the outstanding balance due to the Plaintiff on the Mortgage and the fees and costs associated with the foreclosure, pursuant to the Mortgage, the remaining proceeds from the foreclosure sale is Sixty-Five Thousand One Hundred Seventy-Eight and 67/100 ($65,178.67) Dollars.

17.   The Internal Revenue Service, Raymond Silva, Jr., Michelle Silva, and Katharine Messier are entitled to the surplus funds.  The Plaintiff is not aware of any other creditor(s) who may stake a claim to the surplus funds.

## COUNT I - DECLARTORY JUDGMENT

18.   The Plaintiff reasserts and reavers the allegations contained in Paragraphs 1 through 17 of this Complaint as if fully set out herein and expressly makes them a part of this Count I.

19.   The Plaintiff asserts that it may be subject to disputed claims to the surplus funds.

20.   The Plaintiff is unaware of the rights of the Defendants and is unable to determine whether the Defendants or some other creditor or entity is justly due the surplus funds.

21.   The Plaintiff has an interest in the surplus funds to the extent the law allows it to recover its fees, costs and expenses associated with this interpleader action to be paid from the surplus.

WHEREFORE, the Plaintiff, St. Anne's Credit Union of Fall River, Mass., prays that:

a.   The Defendants be restrained from instituting any action against the Plaintiff for the recovery of the surplus funds or any part thereof;

b.   The Plaintiff be allowed its costs, expenses, and reasonable attorneys' fees in this interpleader action;

c.    The Plaintiff be permitted to pay into this Court the surplus funds, less the reasonable attorneys' fees and costs incurred by the Plaintiff in connection with the filing and prosecution of this action;

d.    Following the deposit of the surplus funds with the Court, the Plaintiff be dismissed from this action;

e.    Require the Defendants and any other creditor or entity staking a claim to the surplus funds to make their claims to the surplus funds in this case; and

f.    Grant the Plaintiff such other and further relief as this Honorable Court deems just and equitable.

ST. ANNE'S CREDIT UNION OF FALL
RIVER, MASS.
By its attorneys,
WYNN & WYNN, P.C.

Raymond C. Pelote, BBO#655475
90 New State Highway
Raynham, MA  02767
Tel. No. (508) 823-4567
rpelote@wynnandwynn.com

Dated: September 30, 2021

EXHIBIT

A

BK 4642 PG
03/17/00 01:47 DOC. 6246
Bristol Co. S.D.

I, KARIN SILVA

of   Dartmouth                                        Bristol County, Massachusetts

being unmarried, for consideration of   $1.00                              paid,

grant   to   RAYMOND SILVA and KARIN SILVA, husband and wife, tenants
by the entirety

being unmarried

who reside   at   246 Rock O'Dundee Rd. in Dartmouth, Massachusetts   02748

with quitclaim covenants,

the land, with any buildings thereon, in   Dartmouth, Bristol County, Commonwealth
of Massachusetts, bounded and described as follows:

BEGINNING at the southeast corner of the land herein described at
a point in the westerly line of Rock O'Dundee Road, and at the
northeast corner of Lot #4 as shown on plan of land hereinafter
mentioned;

thence SOUTH 87 degrees 08' 10" WEST in line of last-named lot and
Lot "E" as shown on said plan, one hundred eighty-eight and 91/100
(188.91) feet to land now or formerly of Robert Mello;

thence NORTH 19 degrees 26' 07" EAST in line of last-named land
and a stone wall, one hundred thirty-five and 64/100 (135.64) feet
to a point for a corner;

thence NORTH 87 degrees 08' 07" EAST in line of a way, one hundred
seven and 43/100 (107.43) feet to a point;

thence NORTHEASTERLY, EASTERLY and SOUTHEASTERLY in the arc of a
curve having a radius of thirty (30) feet, a distance of
forty-seven and 12/100 (47.12) feet to a point in the said line of
Rock O'Dundee Road;

thence SOUTH 2 degrees 51' 50" EAST in line of said Rock O'Dundee
Road, ninety-five and 50/100 (95.50) feet to the point of
beginning.

BEING shown as Lot 3 and Lot "D" on a plan entitled "Plan of Land
Rock O'Dundee Road, Dartmouth, Massachusetts", dated December 30,
1977, Perkins Engineering, Inc., Middleborough, Massachusetts,
revised January 24, 1978, and filed in Bristol County S.D.
Registry of Deeds in Plan Book 102, Page 53.

FOR TITLE, see deed from Raymond Silva, dated August 7, 1989 and
recorded in said Registry of Deeds in Book 4108, Page 704.

SUBJECT to all encumbrances of record, including easements,
restrictions, and rights of way, if any, insofar as the same may
be in force and applicable.

SUBJECT to the 2000 fiscal year real estate taxes which the
grantee(s) assume(s) and agree(s) to pay.

PROPERTY ADDRESS:   246 Rock O'Dundee Road
Dartmouth, Massachusetts   02748

BK 4642 PG 22

**Witness** my hand and common seal this 17th day of March XX 2000

Executed in the presence of

_Karin Silva_
Karin Silva

Witness

**Commonwealth of Massachusetts**

Bristol, ss.                                  New Bedford,        March 17,        19x 2000

  Then personally appeared the above named    Karin Silva

and acknowledged the foregoing instrument to be    her    free act and deed,

        before me

                   Notary Public.

        My commission expires _9/20/06_ 19.

EXHIBIT

_B_

# NOTE

November 8, 2005                    New Bedford,                    Massachusetts
                                      [City]                          [State]

246 Rock-O-Dundee Road, Dartmouth, Massachusetts 02748
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$217,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is St. Anne's Credit Union of Fall River, Mass..  I will make payments under this Note in the form of cash, check, or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of 6.250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First day of each month beginning on January 1, 2006.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on December 1, 2035 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 286 Oliver Street, Fall River, Massachusetts 02724 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,336.11.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make  this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces  Principal, the reduction will be treated as a partial Prepayment.

SILVA, FAIRMOIL & KEEN

MULTISTATE FIXED RATE NOTE--Single Family--FNMA/FHLMC UNIFORM INSTRUMENT                    Form 3200 1/01 *(page1 of 3 pages )*

©1986-2005 Standard Solutions, Inc. 781-324-0550                                            FNNote

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3.0000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____        _____
Witness                                                        Raymond Silva

                                                                      _____
                                                                      Karin Silva

St. Anne's Credit Union of Fall River, Mass.
286 Oliver Street
Fall River, MA 02724

**EXHIBIT**

*C*

BK 7869 PG 6
11/14/05 10:08 DOC. 38723
Bristol Co. S.D.

Loan No.

_____[Space Above This Line For Recording Data]_____

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20, and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **November 8, 2005**, together with all Riders to this document.
**(B) "Borrower"** is **Raymond Silva and Karin Silva**. Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is **St. Anne's Credit Union of Fall River, Mass..** Lender is a corporation, organized and existing under the laws of **Commonwealth of Massachusetts**. Lender's address is **286 Oliver Street, Fall River, Massachusetts 02724**. Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated **November 8, 2005**. The Note states that Borrower owes Lender **Two Hundred Seventeen Thousand and 00/100 Dollars** (U.S. **$217,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 1, 2035**.
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☒ Other(s) [specify]
EXHIBIT "A".

☐ 1-4 Family Rider ☐ Biweekly Payment Rider

(H) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) **"Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) **"Escrow Items"** mean those items that are described in Section 3.

(L) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described

BK 7868 PG 8

property located in the **County** [Type of Recording Jurisdiction] of **Bristol** [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of **246 Rock-O-Dundee Road, Dartmouth, Massachusetts 02748** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order;(c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits

BK 7868 PG 9

are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues,

BK 7868 PG 10

fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3. Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

©1986-2005 Standard Solutions, Inc. 781-324-0550

BK 7868 PG 12

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the

BK 7868 PG 13

Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

BK 7868 PG 14

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, any may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

BK 7868 PG 15

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has, if any, with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages,

BK 7868 PG 16

Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a

BK 7868 PG 17

specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

BK 7868 PG 19

requires in connection with a n( _e of transfer of servicing. If the Note ( _old and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

BK 7868 PG 20

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22.  Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23.  Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24.  Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of courtesy and dower in the Property.

BK 7868 PG 21

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____   _____
Witness                     Raymond Silva

                            _____
                            Karin Silva

---------------- [Space Below This Line For Acknowledgment] ----------------

### Commonwealth of Massachusetts                           Bristol, ss:

On this 8th day of November, 2005, before me, the undersigned notary public, personally appeared Raymond Silva and Karin Silva, proved to me through satisfactory evidence of identification, which were *MA + Fla   Dri Li·* to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

                            _____
                            Raymond J. Quintin
                            Notary Public
                            My Commission Expires:  July 10, 2009

MASSACHUSETTS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022  1/01  (page 16 of 16 pages)
©1986-2005 Standard Solutions, Inc. 781-324-0550                                                          FNMtgMA

BK 7868 PG 22

## Exhibit A - Property Description

Closing date:          November 8, 2005

Property
Address:                246 Rock-O-Dundee Road, Dartmouth, Massachusetts 02748

The land with any buildings thereon situated in Dartmouth,
Bristol County, Commonwealth of Massachusetts, bounded and
described as follows:

BEGINNING at the southeast corner of the land herein described
at a point in the westerly line of Rock O'Dundee Road, and at
the northeast corner of Lot #4 as shown on plan of land
hereinafter mentioned;

thence SOUTH 87 degrees 08' 10" WEST in line of last-named lot
and Lot "E" as shown on said plan, one hundred eighty-eight and
91/100 (188.91) feet to land now or formerly of Robert Mello;

thence NORTH 19 degrees 26' 07" EAST in line of last-named land
and a stone wall, one hundred thirty-five and 64/100 (135.64)
feet to a point for a corner;

thence NORTH 87 degrees 08' 07" EAST in line of a way, one
hundred seven and 43/100 (107.43) feet to a point;

thence NORTHEASTERLY, EASTERLY and SOUTHEASTERLY in the arc of a
curve having a radius of thirty (30) feet, a distance of
forty-seven and 12/100 (47.12) feet to a point in the said line
of Rock O'Dundee Road;

thence SOUTH 2 degrees 51' 50" EAST in line of said Rock
O'Dundee Road, ninety-five and 50/100 (95.50) feet to the point
of beginning.

BEING shown as Lot 3 and Lot "D" on a plan entitled "Plan of
Land Rock O'Dundee Road, Dartmouth, Massachusetts", dated
December 30, 1977, Perkins Engineering, Inc., Middleborough,
Massachusetts, revised January 24, 1978, and filed in Bristol
County S.D. Registry of Deeds in Plan Book 102, Page 53.

For title see deed dated March 17m 2000 and recorded in Bristol County
S.D. Registry of Deeds, Book 4642, Page 21.



EXHIBIT
D

| Form 668 (Y)(c) (Rev. February 2004) | 4805 | Department of the Treasury - Internal Revenue Service **Notice of Federal Tax Lien** | | |
|---|---|---|---|---|
| Area: SMALL BUSINESS/SELF EMPLOYED AREA #1 Lien Unit Phone: (800) 829-3903 | | Serial Number 181635515 | | For Optional Use by Recording Office |

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

BK 11515 PG 9
10/27/15 10:49 DOC. 22950
Bristol Co. S.D.

Name of Taxpayer  RAYMOND & KARIN SILVA

Residence      246 ROCK ODUNDEE RD
               S DARTMOUTH, MA 02748-1428

IMPORTANT RELEASE INFORMATION: For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2010 | XXX-XX-9036 | 08/22/2011 | 09/21/2021 | 2532.78 |
| 1040 | 12/31/2011 | XXX-XX-9036 | 01/07/2013 | 02/06/2023 | 3776.44 |
| 1040 | 12/31/2012 | XXX-XX-9036 | 11/25/2013 | 12/25/2023 | 26835.13 |
| 1040 | 12/31/2013 | XXX-XX-9036 | 09/22/2014 | 10/22/2024 | 6159.49 |

| Place of Filing | Registry of Deeds Southern Bristol County New Bedford, MA 02740 | Total | $ | 39303.84 |
|---|---|---|---|---|

This notice was prepared and signed at   MANHATTAN, NY

the   16th   day of   October   2015

| Signature  Cheryl Cordero For P.A. BELTON | | Title ACS BSBE (800) 829-3903 | 21-00-0008 |
|---|---|---|---|

NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60026X



EXHIBIT

E

Bk: 12177 Pg: 177

| Form 668 (Y)(c)<br>(Rev. February 2004) | 11874 | Department of the Treasury - Internal Revenue Service<br>**Notice of Federal Tax Lien** |
|---|---|---|

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #1<br>Lien Unit Phone: (800) 829-3903 | Serial Number<br>273987017 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

2017  000181766

Bk: 12177 Pg: 177 Pg: 1 of 1
Doc: FLIEN 08/21/2017 02:1

**Name of Taxpayer** RAYMOND & KARIN SILVA

**Residence**    246 ROCK ODUNDEE RD
S DARTMOUTH, MA 02748-1428

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax<br>(a) | Tax Period<br>Ending<br>(b) | Identifying Number<br>(c) | Date of<br>Assessment<br>(d) | Last Day for<br>Refiling<br>(e) | Unpaid Balance<br>of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2014 | XXX-XX-9036 | 09/14/2015 | 10/14/2025 | 1466.50 |
| 1040 | 12/31/2015 | XXX-XX-9036 | 09/19/2016 | 10/19/2026 | 4997.36 |

| Place of Filing | Registry of Deeds<br>Southern Bristol County<br>New Bedford, MA 02740 | Total | $ | 6463.86 |
|---|---|---|---|---|

This notice was prepared and signed at    MANHATTAN, NY    , on this

the    10th    day of    August    , 2017 .

| Signature<br>*Joan Flach*<br>for P.A. BELTON | Title<br>ACS SBSE<br>(800) 829-3903 | 21-00-000 |
|---|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgment is not essential to the validity of Notice of Federal Tax lien
Rev. Rul. 71-466, 1971 - 2 C.B. 409)

Part 1 - Kept By Recording Office

Form 668(Y)(c) (Rev. 2-2004)
CAT. NO 60025X

**EXHIBIT** F

Bk: 12538 Pg: 186
**CERTIFICATE OF VITAL RECORD**

# The Commonwealth of Massachusetts
## City of New Bedford



Commonwealth of Massachusetts
Registry of Vital Records and Statistics
**CERTIFICATE OF DEATH**

State File # 2017 046151
Registered # 1888

| | |
|---|---|
| Place of Death | ST. LUKES HOSPITAL, NEW BEDFORD, MA |
| Date of Death | OCTOBER 10, 2017 |

Age 71 YRS    Sex FEMALE

| | |
|---|---|
| Current Name | SILVA , KARIN — |
| Surname at Birth or Adoption | LIEDEMANN |

SSN ▮▮▮▮▮▮

AKA —

| | |
|---|---|
| Date of Birth JANUARY 07, 1946 | Birthplace BERJEN, GERMANY |
| Residence | 1674 SE MEMORIAL STREET, PORT ST. LUCIE, FLORIDA. 34983 |
| Race WHITE | Education HIGH SCHOOLGRADUATE OR GED |
| Marital Status MARRIED | Occupation/Industry HOMEMAKER/OWN HOME |

| | |
|---|---|
| Last Spouse – Last, First, Middle (Surname at Birth or Adoption) SILVA, RAYMOND (SILVA) | Decedent: U.S. Veteran (Most Recent) NO |
| Mother/Parent Name – Last, First, Middle (Surname at Birth or Adoption) LIEDEMANN, MARGARET (UNKNOWN) | Birthplace GERMANY |
| Father/Parent Name – Last, First, Middle (Surname at Birth or Adoption) LIEDEMANN, HEINRICHE (LIEDEMANN) | Birthplace GERMANY |

Part I. Cause of Death — Sequentially list immediate cause then antecedent causes, then underlying cause

Interval between onset and death

a. Immediate Cause (Final condition resulting in death)
**CARDIOPULMONARY ARREST** — SEC.

b. Due to or as a consequence of:
**PANCREATIC CANCER** — MOS.

c. Due to or as a consequence of: —

d. Due to or as a consequence of:

Part II. Other significant conditions contributing to death but not resulting in underlying cause
**LUPUS ERYTHEMATOSUS, HYPERTENSION**

| | |
|---|---|
| Manner of Death: | NATURAL |
| Time of Death: | 04:19 AM |
| Result of Injury: | NO |
| Lic = 252634 | |

| | |
|---|---|
| Certifier SUSAN KAYASTHA, MD | |
| Addr. 101 PAGE STREET, NEW BEDFORD, MASSACHUSETTS 02740 | Lic # 7377 |

| | |
|---|---|
| Funeral Licensed Designee BETTE A DUNN | |
| Facility/Addr. DARTMOUTH FUNERAL HOME, DARTMOUTH, MASSACHUSETTS | |
| Immediate Disposition REMOVAL FROM STATE | |
| Date of Immediate Disposition OCTOBER 17, 2017 | |
| Place/Address NEW ENGLAND CREMATION SERVICES, 25 STARLINE WAY, CRANSTON, RHODE ISLAND 02921 | |
| Date of Record OCTOBER 16, 2017 | |
| Date of Amendment — | |

CLERK, CITY OF NEW BEDFORD

DATE ISSUED:    OCTOBER 16, 2017
I, the undersigned, hereby certify that I am the Clerk of the City of New Bedford, that as such Clerk I am custody of the records of birth, marriage, and death required by law to be kept in my office, and I do hereby certify that the above is a true copy from said records, as held in the Commonwealth's central vital records information repository.



Clerk
City of New Bedford

**VOID IF ALTERED OR ERASED**

Bk: 12538 Pg: 188



**EXHIBIT**

**G**

## DEED

KNOW ALL MEN BY THESE PRESENTS that I, **Raymond Silva a.k.a. Raymond Silva, Sr.,** being unmarried, of 246 Rock-O-Dundee Road, S. Dartmouth, Bristol County, MA 02748, for consideration of love and affection and One Dollar ($1.00), hereby grant to myself, **Raymond Silva, Sr.** for my lifetime, with the full power to mortgage, sell, convey or otherwise encumber the premises, remainder to **Ryan Silva,** of 246 Rock-O-Dundee Road, S. Dartmouth, MA 02748, **Michelle Silva,** of 54 Calumet Street, New Bedford, MA 02744, and **Raymond Silva, Jr.,** of 9 Morningside Avenue, Acushnet, MA 02743, as tenants in common, no notice to, or assent by, the Grantee in this instrument or his/her assigns shall be necessary in connection with any exercise of the rights retained by the Grantor in this instrument,

**with quitclaim covenants,**

the lands in **Dartmouth,** Bristol County, bounded and described as follows:

SEE SCHEDULE A.

For Title of **Raymond Silva a.k.a. Raymond Silva, Sr.,** see deed dated March 17, 2000, recorded in the Bristol County Registry of Deeds in Book 4642, Page 21. Karin L. Silva is deceased. See Affidavit of No Estate Tax Due and Death Certificate recorded herewith.

NO TITLE EXAMINATION
NO DOCUMENTARY STAMPS REQUIRED

WITNESS my hand and seal on this day, August 15, 2018.

Raymond Silva a.k.a. Raymond Silva, Sr.

### MASSACHUSETTS COMM

Bristol, ss.                        New Bedford                        August 15, 2018

On this day, August 15, 2018, before me, the undersigned notary public, personally appeared **Raymond Silva a.k.a. Raymond Silva, Sr.,** proved to me through satisfactory evidence of identification, which was personal knowledge, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Brandon C. Walecka, Notary Public
My Commission Expires: July 26, 2024

Mail to:
Surprenant & Beneski, P.C.
35 Arnold Street
New Bedford, MA 02740

PROPERTY ADDRESS: 246 Rock-O-Dundee Rd, S. Dartmouth, MA 02748

Bk: 12538  Pg: 189

## SCHEDULE A

The land, with any buildings thereon, in Dartmouth, Bristol County, Commonwealth of Massachusetts, bounded and described as follows:

Beginning at the southeast corner of the land herein described at a point in the westerly line of Rock O'Dundee Road, and at the northeast corner of Lot #4 as shown on plan of land hereinafter mentioned;

Thence South 87 degrees 08' 10" West in line of last-named lot and Lot "E" as shown on said plan, one hundred eighty-eight and 91/100 (88.91) feet to land now or formerly of Robert Mello;

Thence North 19 degrees 26' 07" East in line of last-named land and a stone wall, one hundred thirty-five and 64/100 (135.64) feet to a point for a corner;

Thence North 87 degrees 08' 07" East in line of a way, one hundred seven and 43/100 (107.43) feet to a point;

Thence Northeasterly, Easterly and Southeasterly in the arc of a curve having a radius of thirty (30) feet, a distance of forty-seven and 12/100 (47.12) feet to a point in the said line of Rock O'Dundee Road;

Thence South 2 degrees 51' 50" East in line of said Rock O'Dundee Road, ninety-five and 50/100 (95.50) feet to the point of beginning.

Being shown as Lot 3 and Lot "D" on a plan entitled "Plan of Land Rock O'Dundee Road, Dartmouth, Massachusetts", dated December 30, 1977, Perkins Engineering, Inc., Middleborough, Massachusetts, revised January 24, 1978, and filed in Bristol County S.D. Registry of Deeds in Plan Book 102, Page 53.

This conveyance is made subject to and together with all rights, reservations, covenants, easements and encumbrances of record insofar as the same are now in force and applicable.

PROPERTY ADDRESS: 246 Rock-O-Dundee Rd, Dartmouth, MA 02748

EXHIBIT

tabbies®

*H*

# Southern Bristol Registry of Deeds

# Electronically Recorded Document

This is the first page of the document - Do not remove

## Recording Information

| | |
|---|---|
| Document Number | : 10315 |
| Document Type | : CTF |
| Recorded Date | : April 05, 2021 |
| Recorded Time | : 11:10:48 AM |
| | |
| Recorded Book and Page | : 13742 / 109 |
| Number of Pages(including cover sheet) | : 3 |
| Receipt Number | : 124940 |
| Recording Fee | : $105.00 |

**Southern Bristol Registry of Deeds**
**Sherrilynn M. Mello, Register**
**25 N 6th Street**
**New Bedford, MA 02740**
**508-993-2603**
**www.NewBedfordDeeds.com**





**Commonwealth of Massachusetts**
*Registry of Vital Records and Statistics*
**CERTIFICATE OF DEATH**

| State File # | 2018 047072 |
|---|---|
| Registered # | 1099 /371 |

| | |
|---|---|
| *Place of Death* | ST. LUKES HOSPITAL, NEW BEDFORD, MA |
| *Date of Death* | OCTOBER 17, 2018 | *Age* 73 YRS | *Sex* MALE |
| *Current Name* | SILVA , RAYMOND — |
| *Surname at Birth or Adoption* | SILVA | *SSN* |
| *AKA* — | |
| *Date of Birth* | DECEMBER 03, 1944 | *Birthplace* NEW BEDFORD, MASSACHUSETTS |
| *Residence* | 246 ROCK O'DUNDEE ROAD, DARTMOUTH, MASSACHUSETTS 02748 |
| *Race* WHITE | *Education* HIGH SCHOOL GRADUATE OR GED |
| *Marital Status* WIDOWED | *Occupation/Industry* FIREFIGHTER/MUNICIPAL |
| *Last Spouse – Last, First, Middle (Surname at Birth or Adoption)* SILVA, KARIN (LIEDEMANN) | *Decedent: U.S. Veteran (Most Recent)* NO |
| *Mother/Parent Name – Last, First Middle (Surname at Birth or Adoption)* SILVA, ZULMIRA (ALFREDO) | *Birthplace* MASSACHUSETTS |
| *Father/Parent Name – Last, First Middle (Surname at Birth or Adoption)* SILVA, MANUEL FERREIRA (SILVA) | *Birthplace* MASSACHUSETTS |

*Part I. Cause of Death – Sequentially list immediate cause then antecedent causes then underlying causes*

*Interval between onset and death*

a. Immediate Cause (Final condition resulting in death)
**BACTEREMIA**

b. Due to or as a consequence of:
**METASTATIC RENAL CANCER** — DAYS

c. Due to or as a consequence of:
— — YRS.

d. Due to or as a consequence of:
—

*Part II. Other significant conditions contributing to death but not resulting in underlying cause*
HYPERTENSION, CEREBROVASCULAR ACCIDENT, BENIGN PROSTATIC HYPERPLASIA

| | |
|---|---|
| *Manner of Death:* | NATURAL |
| *Time of Death:* | 09:01 AM |
| *Result of Injury:* | NO |

| | | |
|---|---|---|
| *Certifier* KIRTI BASIL, MD | | *Lic #* 270161 |
| *Addr.* 101 PAGE STREET, NEW BEDFORD, MASSACHUSETTS 02740 | | |
| *Funeral Licensee/ Designee* BETTE A DUNN | | *Lic #* 7377 |
| *Facility/Addr.* DARTMOUTH FUNERAL HOME, DARTMOUTH, MASSACHUSETTS | | |
| *Immediate Disposition* REMOVAL FROM STATE | | |
| *Date of Immediate Disposition* OCTOBER 22, 2018 | | |
| *Place/Address* NEW ENGLAND CREMATION SERVICES, 25 STARLINE WAY, CRANSTON, RHODE ISLAND 02921 | | |
| *Date of Record* OCTOBER 19, 2018 | | |
| *Date of Amendment* — | | CLERK, CITY OF NEW BEDFORD |

Date: ___MAR 0 5 2021___
A true and exact copy

*Sarah C. Arruda*

R-301 p. 2 of 2                                    SILVA                                          SFN: 2018 047072
NEW BEDFORD 1099
DARTMOUTH 2018-271
STATE VOL/PG: /

| If U.S. war veteran, specify war/conflict(s) --- | | | |
|---|---|---|---|
| Branch of military (most recent) --- | | Rank/organization/outfit(most recent) | |
| Date entered (most recent) --- | Date Discharged (most recent) --- | | Service Number (most recent) --- |
| Place of Death Type **HOSPITAL - INPATIENT** | | Date of Pronouncement --- | Time of Pronouncement --- |
| RN/NP/PA Pronouncement? **NO** | Name of RN/NP/PA Pronouncing Death | | Lic # |
| RN/NP/PA Employing Agency or Institution --- | | Name of Physician or Medical Examiner notified --- | |
| Was M.E. Notified? **NO** | Provider in charge of patient's care, if not certifier | | |
| Autopsy Performed? **NO** | Findings available for Cause? --- | Tobacco contribute to death? **NO** | Pregnancy Status, if female |
| Date of Injury | Time of Injury --- | Injury at Work? | If Transportation Injury, specify: --- |
| Place of Injury | | Location/Address of Injury: --- | |
| Describe How Injury Occurred | | | |
| Expanded Race: **WHITE** | | | |
| Ethnicity: **AMERICAN** | | | |
| Informant Name **RYAN SILVA** Addr: **246 ROCK O'DUNDEE ROAD, DARTMOUTH, MASSACHUSETTS 02748** | | Relationship **SON** | |
| Date Disposition Permit Issued: **OCTOBER 19, 2018** | | Board of Health Agent **DAMON O. CHAPLIN** | |
| State Tracking No. **047072** | | Local Permit No. **18-047072** | |

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
## CERTIFICATION OF VITAL RECORD



**EXHIBIT**
_I_

19 006168

RHODE ISLAND DEPARTMENT OF HEALTH
MEDICAL EXAMINER CERTIFICATE OF DEATH

LOCAL FILE NUMBER                     STATE FILE NUMBER

PHYSICIAN: COMPLETE SHADED AREAS ONLY.
FUNERAL DIRECTOR: COMPLETE UNSHADED AREAS.

**DECEDENT**

| 1. NAME - FIRST | MIDDLE | LAST | 2. SEX | 3. DATE OF DEATH (Month, Day, Year) |
|---|---|---|---|---|
| Ryan | Christopher | SILVA | Male | 07/12/2018 |

| 5. AGE - Last Birthday (Years) | | | 6. DATE OF BIRTH (Month, Day, Year) | 7. BIRTHPLACE (City and state or Foreign Country) |
|---|---|---|---|---|
| 42 | | | April 19, 1977 | Dartmouth, Massachusetts |

| 8. EVER IN U.S ARMED FORCES? (Specify Yes or No) | 9a. HISPANIC ORIGIN (Yes or No, If Yes, Specify Origin) | 9b. RACE (List all that apply) |
|---|---|---|
| No | No | White/ Portuguese |

| 11a. USUAL OCCUPATION (Do NOT use retired) | 11b. KIND OF BUSINESS OR INDUSTRY |
|---|---|
| Manager | East Coast Interiors |

| 12a. MARITAL STATUS | 12b. SPOUSE/PARTNER (Give maiden name, if applicable) |
|---|---|
| ☒ Married | Katharine E. Messier |

| 13a. RESIDENCE ADDRESS (Street number and name) | 13b. CITY or TOWN of RESIDENCE, STATE & ZIP code |
|---|---|
| 50 Breakneck Hil Road | Lincoln, Rhode Island 02865 |

| 14. MAILING ADDRESS | 15. EDUCATION (Decedent's) |
|---|---|
| | High School Diploma |

**PARENTS**

| 16. FATHER/PARENT – FIRST NAME | MIDDLE | LAST/MAIDEN NAME | 17. MOTHER/PARENT - FIRST NAME | MIDDLE | LAST/MAIDEN NAME |
|---|---|---|---|---|---|
| Raymond | | Silva | Karin | | Liedemann |

| 18a. INFORMANT'S NAME | 18b. MAILING ADDRESS (Number, Street name, City or Town, State and Zip Code) |
|---|---|
| Katharine E. Messier | 50 Breakneck Hill Rd., Lincoln, RI 02865 |

**DISPOSITION**

| 19a. BURIAL, CREMATION, DONATION, OTHER (Specify) | 19b. PLACE OF DISPOSITION (Name of cemetery, crematory, or other place) | CITY or TOWN STATE |
|---|---|---|
| Cremation | Swan Point Crematory, Providence, Rhode Island |

| 20a. SIGNATURE OF FUNERAL SERVICE LICENSEE | 20b. FUNERAL HOME - NAME | 20c. FUNERAL HOME LICENSE NUMBER |
|---|---|---|
| | Bellows Funeral Chapel | 77 |

| ITEMS BELOW TO BE COMPLETED BY MEDICAL EXAMINER ONLY | 20d. FUNERAL HOME ADDRESS (Number, Street name, City or Town, State and Zip Code) |
|---|---|
| | 160 River Rd., Lincoln, Rhode Island 02865 |

**MEDICAL EXAMINER**

| 31a. ADDRESS OF MEDICAL EXAMINER |
|---|
| 48 Orms Street Providence, RI 02904 |

**REGISTRAR**

| 32. REGISTRAR (Signature) | 32a. FILE DATE/DATE RECEIVED BY REGISTRAR (Day, Yr) |
|---|---|
| Erin C Vaughan   Deputy Town Clerk | 8-1-2017 |

**CAUSE OF DEATH**

Atherosclerotic cardiovascular disease

chronic alcoholism

R.I. Law requires Funeral director to file this certificate with the City or Town Clerk at the Place of Death within 7 days.

REV 3/2018

1987634

I hereby certify that this is a true and exact copy of the document officially registered and placed on file in the issuing office.

AUG 26 2019

Issuing Office   **STATE OFFICE , PROVIDENCE**       Date of Issuance

Signature of Registrar   _Roberta M Georgian_

THIS COPY VALID ONLY IF ISSUED ON WATERMARKED PAPER CONTAINING SECURITY FIBERS, DISPLAYING SEAL AND SIGNATURE OF STATE OR LOCAL REGISTRAR


ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

EXHIBIT

J

# Southern Bristol Registry of Deeds

# Electronically Recorded Document

This is the first page of the document - Do not remove

## Recording Information

| | |
|---|---|
| Document Number | : 25351 |
| Document Type | : DEED |
| Recorded Date | : August 24, 2021 |
| Recorded Time | : 09:33:59 AM |
| | |
| Recorded Book and Page | : 13968 / 251 |
| Number of Pages(including cover sheet) | : 5 |
| Receipt Number | : 136314 |
| Recording Fee (including excise) | : $1,409.00 |

```
************************************************
MASSACHUSETTS EXCISE TAX
Bristol ROD South 001
Date:  08/24/2021 09:33 AM
Ctrl# 034480 18698  Doc# 00025351
Fee:  $1.254.00  Cons: $275.000.00
************************************************
```

**Southern Bristol Registry of Deeds**
**Sherrilynn M. Mello, Register**
**25 N 6th Street**
**New Bedford, MA 02740**
**508-993-2603**
**www.NewBedfordDeeds.com**

See Attached Affidavit

## FORECLOSURE DEED

WHEREAS, **Raymond Silva and Karin Silva**, did, by a certain Mortgage given to **St. Anne's Credit Union** of Fall River, Mass. dated November 8, 2005 and recorded with the Bristol County Southern District Registry of Deeds in Book 7868, Page 6, convey the premises herein described to **St, Anne's Credit Union of Fall River, Mass.**, and whereas in and by said Mortgage, the grantee therein named, or its assigns, were authorized and empowered, upon any default in the performance or observance of the condition of said Mortgage, to sell the said premises with all improvements that might be thereon, at public auction in Dartmouth, Bristol County, Massachusetts, first publishing a notice as therein required, and to convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and whereas: and whereas there has been such default, and notice has been published, and a sale has been made, as will more particularly appear in and by the affidavit hereto to be subjoined.

NOW, THEREFORE, know all men that **St. Anne's Credit Union of Fall River, Mass.**, present holder of said Mortgage, by virtue and in execution of the power contained in said Mortgage as aforesaid, and of every other power it hereto enabling, and in consideration of the sum of **Two Hundred Seventy-Five Thousand and 00/100 ($275,000.00) Dollars** to it paid by **John Afonso Properties, LLC,** the receipt whereof is hereby acknowledged do hereby GRANT, BARGAIN, SELL, and CONVEY unto the said **John Afonso Properties, LLC,** a Massachusetts limited liability company with a usual place of business at 17 Hicks Street, Dartmouth, Bristol County, Massachusetts 02747, all and singular the premises conveyed by the aforesaid Mortgage, namely:

Subject Property:   246 Rock O'Dundee Road, South Dartmouth, Massachusetts, 02747

The land with any buildings thereon situated in Dartmouth, Bristol County, Commonwealth of Massachusetts, bounded and described as follows:

BEGINNING at the southeast corner of the land herein described at a point in the westerly line of Rock O'Dundee Road, and at the northeast corner of Lot #4 as shown on plan of land hereinafter mentioned;

thence SOUTH 87 degrees 08' 10" WEST in line of last-named lot and Lot "E" as shown on said plan, one hundred eighty-eight and 91/100 (188.91) feet to land now or formerly of Robert Mello;

thence NORTH 19 degrees 26' 07" EAST in line of last-named land and a stone wall, one hundred thirty-five and 64/100 (135.64) feet to a point for a corner;

thence NORTH 87 degrees 08' 07" EAST in line of a way, one hundred seven and 43/100 (107.43) feet to a point;

thence NORTHEASTERLY, EASTERLY and SOUTHEASTERLY in the arc of a curve having a radius of thirty (30) feet, a distance of forty-seven and 12/100 (47.12) feet to a point in the said line of Rock O'Dundee Road;

thence SOUTH 2 degrees 51' 50" EAST in line of said Rock O'Dundee Road, ninety-five and 50/100 (95.50) feet to the point of beginning.

BEING shown as Lot 3 and Lot "D" on a plan entitled "Plan of Land Rock O'Dundee Road, Dartmouth, Massachusetts", dated December 30, 1977, Perkins Engineering, Inc., Middleborough, Massachusetts, revised January 24, 1978, and filed in Bristol County S.D. Registry of Deeds in Plan Book 102, Page 53.

**Bk: 13968 Pg: 253**

See Attached Affidavit

For title, see deed dated March 17, 2000 and recorded in Bristol County S.D. Registry of Deeds, Book 4642, Page 21.

TO HAVE AND TO HOLD the same to the said **John Afonso Properties, LLC** and its successors and assigns, to their own use and behoof forever.

IN WITNESS WHEREOF, the said **St. Anne's Credit Union of Fall River, Mass.**, has caused its corporate seal to be hereto affixed and these presents to be signed in its name and behalf by **Carlos A. DeCunha, Senior Vice President**, this 23rd day of July in the year two thousand and twenty-one.

**ST. ANNE'S CREDIT UNION OF FALL RIVER, MASS.**

_____
Carlos A. DeCunha, Senior Vice President

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF BRISTOL, ss.

On this 23 day of July, 2021, before me, the undersigned notary public, personally appeared Carlos A. DeCunha, Senior Vice President of **St. Anne's Credit Union of Fall River, Mass.**, who proved to me through satisfactory evidence of identification, which was ☒ photographic identification with signature issued by a federal or state governmental agency, ☐ oath or affirmation of a credible witness, ☐ personal knowledge of the undersigned, to be the person whose name is signed on the preceding or attached document(s), and acknowledged to me that he signed it voluntarily for its stated purpose and acknowledged the same to be his free act and deed and the free act and deed of St. Anne's Credit Union of Fall River, Mass., as aforesaid.

LISA A. MEDEIROS
Notary Public
Commonwealth of Massachusetts
My Commission Expires December 14, 2023

_____
Notary Public
My Commission Expires:

3

See Foregoing Foreclosure Deed

### AFFIDAVIT

I, Carlos A. DeCunha, Senior Vice President of St. Anne's Credit Union of Fall River, Mass, on oath depose and say, on behalf of the said St. Anne's Credit Union of Fall River, Mass., that default has been made in the payment of the principal and interest mentioned in the condition of the Mortgage above referred to, the said principal and interest not having been at the time when it became payable, or at any time, paid or tendered to any person authorized to receive the same; and that, pursuant to the provision of said Mortgage and to the requirements of the Statutes of the Commonwealth of Massachusetts, the said St. Anne's Credit Union of Fall River, Mass. published on May 31, 2021, June 7, 2021 and June 14, 2021, in The Standard Times, a newspaper published in the County of Bristol, Massachusetts and purporting to be a newspaper of general circulation in South Dartmouth, Bristol County, Massachusetts aforesaid notice of which the following is a true copy:

(See Exhibit "A" attached hereto and made a part hereof)

I certify that the provisions of the Massachusetts General Laws, Chapter 244, Section 14, as amended were complied with by mailing a copy of the notice of sale by certified mail, return receipt requested on May 13, 2021 and by mailing a copy of the notice of sale continuance on June 22, 2021 to the Mortgagor and others entitled to notice thereof and that the Mortgagor was not in the military service on the date of sale or within one year after a period of military service.

And I further depose and say that, pursuant to said notice and at the time and place therein appointed, the said default still continuing, upon the mortgaged premises, at which time, the said St. Anne's Credit Union of Fall River, Mass, sold the premises conveyed by said Mortgage at public auction by Jay C. Kivowitz, a duly licensed auctioneer, to John Afonso Properties, LLC for the sum of Two Hundred Seventy-Five Thousand and 00/100 ($275,000.00) Dollars, which amount was bid by John Afonso Properties, LLC and was the highest bid made therefor at said auction.

Witness my hand this 23rd day of July, 2021.

ST. ANNE'S CREDIT UNION OF FALL RIVER, MASS.

_____
Carlos A. DeCunha, Senior Vice President

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF BRISTOL, ss.

On this 23 day of July, 2021, before me, the undersigned notary public, personally appeared Carlos A. DeCunha, Senior Vice President of St. Anne's Credit Union of Fall River, Mass., who proved to me through satisfactory evidence of identification, which was ☐ photographic identification with signature issued by a federal or state governmental agency, ☐ oath or affirmation of a credible witness, ☐ personal knowledge of the undersigned, to be the person whose name is signed on the preceding or attached document(s), and acknowledged to me that he signed it voluntarily for its stated purpose and acknowledged the same to be his free act and deed and the free act and deed of St. Anne's Credit Union of Fall River, Mass., as aforesaid.

LISA A. MEDEIROS
Notary Public
Commonwealth of Massachusetts
My Commission Expires December 14, 2023

_____
Notary Public
My Commission Expires:

3

## EXHIBIT A



The Standard-Times

**Classifie** It Works!

Legals | Legals | Legals